We'll call the final case for the day, 19-40315, Suzanne Wooten v. John Roach, et al. Mr. Davis. I'm going to plead the court. Bob Davis here on behalf of the appellants, former Collin County District Attorney John Roach Sr. and former Assistant District Attorney Christopher Milner. I'm going to address the court's jurisdictional questions first and then, time permitting, get into what I believe are the district court's erroneous denials of immunity. This court's jurisdiction is secure and well-founded. When the notices of appeal were filed timely, it divested the district court of jurisdiction to hear the matters which is now exclusively before this court, denial of prosecutorial immunity, denial of qualified immunity, and denial of official immunity. You can't have two courts exercising jurisdiction over the same issues. I totally agree, which is why I hope you understand why we asked the question. Right. The district court doesn't agree with you. Does the district court not agree with you? They didn't. And we filed the jurisdictional notice, and I think the case that is most illustrative of this, we cited in the jurisdictional, it's the May v. Shahan case. It's out of the Seventh Circuit. We've cited it. It was cited in Abbott and Wooten's brief at page 45. It's in the record in our jurisdiction. But the logic of that case would be you're properly here now appealing the denial of absolute prosecutorial immunity. But why would we reach other issues that may or may not be nullities? Why would we give an advisory opinion as to those? If they're challenged, they may come up and be shown to be nullities. We think that you have jurisdiction on all the immunity issues. Clearly, the district court judge denied prosecutorial immunity. That's beyond capital. What he did not do, and brings it up under the Helton scenarios, he failed or declined to rule on qualified immunity, which is a de facto denial. I mean, if you think about it. Well, but that's not what our case law says, right? The Mesa v. Livingston is very clear that the Helton appealability rule doesn't apply when a district judge isn't ordering discovery, etc. Specifically, it only applies when he refuses or won't. But here, he just said, you know, you do what exactly the law encourages, which is you can amend. But look at the procedural quagmire put us in. We could appeal. Well, there may be a quagmire, but I'm just saying the Helton rule, I think by our published case law, doesn't apply. We properly have the issue of prosecutorial immunity in front of us. Isn't the second, I don't know which amended complaint it is, but the amended complaint the judge ordered, isn't that the live complaint now? No, what he did is he took. Excuse me. I'm sorry. Isn't that the live complaint now? That's not the appellant's position. The appellant's position is. Okay, let me try one more time. Yes, sir. There is an amended complaint that has been filed in the district court. That's correct. That is the live complaint. It supersedes the complaints you're appealing from. At the time. Or based on. At the time that second amended complaint was accepted by the district court, this court already had exclusive jurisdiction. I know that, but I have no earthly idea what's in that second amended complaint. Why would we go through the drill of deciding this case and find out that something has changed and it's in the second amended complaint? I mean, we're, as Judge Higginson said, we're just advising, issuing an advisory opinion. No, and I respectfully beg to differ with you, your honor. What you're doing is you are conferring and protecting your exclusive and original jurisdiction. Otherwise, think of the gamesmanship that could happen. A case could be properly on appeal. Are you saying a district judge engages in gamesmanship? I don't think so at all. I know you didn't. No, I do not. That was a rhetorical question. No, I do not. So we're dealing with a district judge who ordered an amended complaint to be filed. That's what's on file in the district court. That's not the complaint that's on appeal here. I just see no sense in handling this appeal with a different complaint down there, and who knows what's in it. If you, and I will again direct the court to the seventh opinion in May, because it addresses all of those kind of concerns. Basically, once the interlocutory appeal was properly filed, it robbed the district court of accepting an amended complaint. It is a legal nullity, as is the second amended memorandum opinion. So let's say, by hypothesis, there are allegations in the second amended complaint that bear on the prosecutorial immunity of your clients or the OAG clients. And they're materially different. I mean, they would lead to, let's say hypothetically, a different outcome. But in your view, if we do have jurisdiction over that, we're confined to the allegations in the first amended complaint, which, as Judge Barstow suggests, may have been superseded. I mean, that's a normal rule. Right, because what the district court, by accepting that second amended complaint when it didn't have jurisdiction, it's impinged and stepped upon your jurisdiction, your exclusive jurisdiction, to discern. So in your view, if we wrote an opinion on prosecutorial immunity, we ought to recognize that that second amended complaint is somehow a nullity? Correct. But that is not the general rule on an interlocutory appeal. We're dealing with an interlocutory appeal. And as I understand the general rule is, on an interlocutory appeal, matters can proceed in the district court if they are different from the subject of the appeal. And again, I have no idea what's in the district court now. And that's true. Your Honors, you're absolutely right, Your Honor, that if there were discrete matters that the district court could address that would not impact this court's decision on. But these facts and these issues are so inextricably intertwined. How do you decide prosecutorial immunity? It's the same core nucleus operative facts that are interwrapped throughout these things. Your decision on these matters impacts the subsequent filing. Well, counsel, assume we're just looking at the original complaint from which you appeal. Correct. Okay. In that context, were either of your clients operating as investigators and detectives, or does the record reflect that they actually had investigators and detectives during those early grand jury years before the indictment was returned? The district attorney's office did have investigators. The allegations that I think the court should focus on are what Mr. Milner, Prosecutor Milner, was doing. And that was they already had an identified suspect. This wasn't a burglary case. This is not a Buckley situation where Mr. Milner is driving around with investigators saying, take fingerprints off this window or look for this. There was a clearly identified district judge who was accused of accepting $150,000 in bribes. What they were doing then is putting a fine point on the pencil of which charges, if any, should be prosecuted. So how long did it take from the allegation of Milner's first involvement until that fine point was clarified to the reach of prosecution? What's the timeline? The timeline was the original complaint from Judge Sandoval, the complaining witness, was in October of 2008. The Collin County District Attorney's Office was recused, voluntarily recused itself on July 2nd of 2010. The indictment was a year later on July 14th of 2011. So I assume there were multiple grand juries involved between 2008 and 2010. There were. And none of them returned an indictment? No, they did not. So how could that possibly be consistent with intimately connected to judicial proceedings? It would not be uncommon in a complex bribery case where they're looking for bank records, judicial or other. Well, that's fine. But in that context, he's operating as an investigator. He's looking for evidence. Then you jump to the qualified immunity issue. Yes, you do. Okay. And then you look. There's no clear how to hold. But that's fine. Then you're almost acknowledging he wouldn't get absolute immunity. We would be jumping to qualified immunity. If your court, if this court concludes that at that threshold issue. But this is a very amorphous concept. And to be clear, there's a separate appeal in our court with respect to qualified immunity that's been stayed. Is that where we are procedurally? Yes. There's a second appeal. And the reason we're there. Counsel, if you could pause. I'm going to ask each counsel to get two extra minutes. Because we did request in their initial question that they'd occupy some of your time, which is important to us. But go ahead. Thank you. To address your honor's question, yes, there are two separate appeals. The reason was is when the first appeal was we took an interlocutory appeal. The answer was due. We filed it. We asked Judge Mazant for a conference. We said we don't believe, based on our appeal, that you have jurisdiction. Will you stay? Obey? We don't want duplicative proceedings. In a perfect world, and what the case law suggests, there should be one shot on a motion to dismiss to address all the immunity issues. Depending on what happens, we go back down. There's evidence developed if necessary. We have a summary judgment. We may come back again. But in this case, what happened is the judge partially ruled on prosecutorial immunity, denied or delayed ruling on qualified immunity, and then basically said, if you don't answer, and it's in the transcript, if you don't answer, I will entertain a default judgment against you. So what do we do? Do we say, we're not going to take this first appeal and come here before you and face a waiver of prosecutorial immunity? Or do we take the other Hodgson's choice and not answer? Well, I understand that you evidently found yourself in a tricky position. But of course, we have to assure ourselves of whether we have jurisdiction and as to what. Right. And it's our position, if you look at the Mays case, I think it provides good guidance because they talk about how the court, how the impact of an interlocutory appeal affects the ability of a trial court to even accept a subsequent pleading. And Judge Mezant did not, in his amendment, and I don't mean to digress. That issue would go only to prosecutorial immunity. Am I right? Clearly, I don't think there's any question or any challenge that this court has jurisdiction to address prosecutorial immunity. He clearly denied it. What he did do, and if you think about the policy concerns underlying immunity, these are supposed to be resolved early and efficiently so that the burdens and rigors of litigation, discovery was stayed. But that's only one facet of the burdens of litigation. Judge Roach and Assistant District Attorney Milner were still required to engage in substantial litigation. We filed a separate motion to dismiss. We had hearings. Your extended time is over, but you have your final time. Thank you, Your Honor. Thank you, Your Honor. And may it please the court, Bill Davis for Greg Abbott and Harry White. Now, that just your introduction of yourself raises the sort of what, for me, is a possible jurisdictional anomaly. You said you're representing Greg Abbott, but he's been dismissed. Well, Your Honor, if I can go directly to that, the second amended complaint is not the operative complaint, and that's because the notices of appeal divested the court of jurisdiction, the district court, under Griggs, right? It's an event of jurisdictional significance. It moves the jurisdiction from the district court. Not necessarily for an interlocutory appeal. No, Your Honor, that's not necessarily true, but in this circumstance it is. And as my colleague mentioned, the only court, I think, that has addressed this specific scenario is the Seventh Circuit in May v. Shahan. Again, cited on page 45 of our brief. And in our view, that's an important thing for this circuit to make clear of the rules because otherwise we have the potential for different levels of the federal judiciary stepping on each other's toes, causing confusion for parties and courts. So how would you suggest we resolve this set of issues presently in front of us? First, recognize that the second amended complaint was not effective, so this court has jurisdiction. This appeal is not moot. Recognize that the court's jurisdiction extends unquestionably to prosecutorial immunity because we have an express ruling on that and official immunity as to Abbott & White. We have an express ruling on that. And then under Bakke v. LeBlanc, recognize that the failure to rule on qualified immunity is also a proper part of this appeal. Now, Your Honor mentioned the Mesa v. Livingston case. That case, of course, came before Bakke. Yes. And so it would control. Well, under the rule of orderliness, I take your point, Your Honor. What I'm saying is the careful procedure laid out in Bakke still governs. But Bakke mostly relies on Wicks, correct? That's right. Wicks is one of the cases it cites. And there the focus is district courts can't order overbroad discovery, but they actually are encouraged to allow plaintiffs to amend their complaints. That's right, but it goes back to Helton v. Clements. But in Mesa we said we are not extending the Helton rule. That's fair, Your Honor. It seems to me the judge was fully informed of that set of rules, and he did it just right. He didn't refuse to rule. He, in fact, did rule, and he said, I'll rule shortly on qualified immunity. I'm just going to give the plaintiff a chance to amend. That sounds like it's precisely in the orbit of that case law. This is different from any previous case because what were we supposed to do in that circumstance? If we didn't appeal that and waited for the amended complaint to supersede the first amended, then his order ruling on prosecutorial immunity would also be moot, and his second order is not going to address prosecutorial immunity. Why is it moot? Why is the order ruling on absolute immunity moot? It's before us. We get to determine whether it's correct or not. No, because if the second amended complaint superseded the first amended complaint, then we just have a district court order on a nonexistent complaint. But as to your two clients, is there anything in the second amended complaint that elaborates beyond what would be before us the first amended complaint in terms of absolute immunity? It seems like certainly not as to Abbott. As to White, it seems that they're still sticking with pretty general descriptions of just investigative rule. Right. Those are labels and conclusions. I think the interesting question here is the jurisdictional question because if we get to the immunities, there's no question that Abbott is out. There's nothing that is non-conclusory alleged against him, and then there's no clearly established law that they can point to at the requisite level of specificity on any of these claims. Well, that's as to the qualified immunity issue. That's as to qualified immunity. So maybe focus on White in terms of the merits. Sure. Okay. As to the merits of prosecutorial immunity defense. Yes. Okay. So the first non-conclusory allegation as to White's conduct appears at pages 70 to 71 of the record. That's the first amended complaint. Paragraphs 46 and 47 say that White, this is at June 28, 2010, contacted the plaintiff, tried to arrange for a meeting in advance of a grand jury session, and then went to court to defend the propriety of that grand jury session. Well, those are judicial acts within the prosecutorial function. Well, maybe I thought it was paragraph 45 where a judge refused to extend the grand jury because White was involved. And if those early grand juries never even returned an indictment, I would think that they would fit squarely into Buckley in our case law. But those are investigative grand juries, and if we can infer that White was involved in that work, he's right there with Milner and Roach. And I guess what we would look for is a particular allegation of White's involvement, and I don't see that in what we view as the operative complaint, the first amended complaint. The second amended complaint doesn't add any detail. No, it in fact subtracts because what I think the plaintiff's counsel did was take the district court's ruling as to White's partial prosecutorial immunity and deleted allegations that the district court said fell within the sphere of prosecutorial immunity. I read that it's similar to your description now, and likewise the law, but I could ask you broadly, when is a prosecutor's involvement in a grand jury in contemplation of presenting an indictment versus gathering evidence? Do you have a sense for where that line is? The courts keep trying to say there's a line. Exactly. It seems a bit artificial. It's not an easy thing to pin down. I think there's a big gray area, and that's why, in our view, the most straightforward path to resolving this entire appeal is qualified immunity, and the court has jurisdiction to do that. And also I should say- What if we find we don't? What happens? Let's say hypothetically we find jurisdiction to resolve absolute prosecutorial immunity, no jurisdiction on qualified immunity. What happens in this case writ large? Well, I guess if we win completely on absolute immunity, then that's it. Everybody gets dismissed on that basis. And if not, then it would be remanded so that presumably there could be the second amended complaint actually filed properly as the district court contemplated. I shouldn't ask questions that just occur to me because they're usually very wrong. Why wouldn't the parties move to consolidate both appeals presently in front of us? Because I don't think that could happen because either there is jurisdiction here because the first amended complaint is the operative one and we have an order on that, or that's all gone, that's moot, because the second amended complaint displaced that and we have jurisdiction then. Wouldn't one panel of ours be the panel to make those distinctions? Well, this panel has to decide, I think- Its jurisdiction over the absolute immunity ruling. Right, over this appeal. So if the court says it has jurisdiction over this appeal, that means the first amended complaint is operative and it can rule on at the very least prosecutorial immunity and argue qualified as well. And, of course, official immunity is in there too. But if the court says, no, this is moot because the second amended complaint was effective, again, we say that's not the rule, but if the court were to go that route, then that's why we have this protective second appeal in place. We filed that just as a protective matter in case the court rejected it. You may be saying, I don't want to put words in your mouth, but if we found that the first amended complaint is the operative complaint, the second amended complaint is somehow a nullity, the second appeal that's currently stayed in this case is moot. Yes. It's one or the other. And so I don't see a scenario in which there could be a consolidation, Judge Higginson. I suppose if the panel were to reverse in that case on qualified immunity, then this case would be vital for Mr. Abbott. That's correct, I believe. And I see my time is running short. Just on official immunity, that is squarely before the court, and the standard there essentially parallels qualified immunity. It's an objective, good-faith standard. The district court looked to a subjective standard, and that's not correct. And that, I guess, would be another basis for exercising jurisdiction over qualified immunity under the pendant appellate jurisdiction theory. And so for all of those reasons, we would ask that the court exercise jurisdiction here and remand the case with instructions to dismiss Abbott and White.  Thank you. Mr. Cox. May it please the Court. My name is Sean Cox, and I represent the appellate, Judge Suzanne Wooten. Now, there are three issues before the court, and the first one and what appears to be the most important is jurisdiction. So I will address that head on. There is a distinction here that is important. In the May case in the Seventh Circuit, that involved the district court entertaining motions for leave to amend a complaint that were filed after a notice of appeal was filed. The ruling granting the motion to leave, both motions to leave, occurred after the notice of appeal had been filed. So there was an action, a discretionary act by the court that interfered with the appellate jurisdiction because it would have nullified the complaint under which the motions to dismiss had been made and ruled upon. And the appellate court would be left to rule on basically a motion and a complaint that were legal nullities. In this case, the appellee requested leave to amend in response to the motions to dismiss, and the district court granted leave, and in fact ordered us to file an amended complaint within two weeks. And we did that. Now, the day before the amended complaint was accepted by the clerk, by us filing it, the notice of appeal was filed, which was actually, I think, two weeks before the deadline to even appeal. So we're in a position now where the district court has done nothing to interfere with the appellate jurisdiction of this court, but there is a second amended complaint that has nullified the original complaint and the motions to dismiss. Doesn't that effectively interfere with our appellate jurisdiction, no matter what the district court's intent was? Well, if there is an interference with this court's jurisdiction, which I think it did defeat the jurisdiction for this appeal, it was not an act by the court but merely the ministerial acceptance by the clerk on docketing of the second amended complaint, which we were ordered to file. So essentially, the acceptance of the amended complaint occurred two weeks before the notice of appeal was filed when the district court ordered us to file an amended complaint. We complied with that, but the district court essentially made the first amended complaint, which was what the motions dismissed were based on, no longer the live complaint, that it was no longer operative because we were compelled to file an amended complaint. Wow, that's really complicated. Do you have a case that stands for that proposition? No, and that's the thing is this is a very unique circumstance, and I've looked, and the only cases I've come across that deal with an issue like this involve motions for leave to amend that were filed after a notice of appeal and that were ruled on after a notice of appeal, where it was the district court taking an action that defeated or undermined the appellate jurisdiction. But in your brief, did you make any of this argument? No, Your Honor, and I'll confess we were not focused on the jurisdiction of this appeal. But your position now is we lack jurisdiction. Yes, and honestly, it was prompted by this court's inquiry on Friday is we looked at it again. We re-evaluated it, and that's when we came to the conclusion that the second amended complaint, when it was accepted, that actually nullified the original, the first amended complaint and defeats jurisdiction because this court can't offer any relief on a legal nullity on the first amended complaint. So we were, and I confess. I'm glad I took federal civil procedure on that. I confess we were focused on whether the district court had jurisdiction to continue operating in this case and adjudicating it, and that's another reason that there is jurisdiction in this case to accept that amended complaint is there's a whole separate defendant here, Collin County, that is not on appeal. Now, the district court, and it's beyond dispute, the district court has the ability to continue operating and adjudicating the case in relation to Collin County and any issue that is not currently before the court. So I understand your point. You're distinguishing the May case from the Seventh Circuit on the grounds that the motion for leave to file the amended complaint came after the notice of appeal in that case, whereas here the court granted leave to file an amended complaint as the court was dismissing the Or denying the motion. Sorry, denying the motion dismissal. Okay. Mr. Cox, what I think what the panel's going to do for most efficiency for us to consider these issues is have the parties do supplemental briefing on the issue of jurisdiction. You came prepared to discuss it. We appreciate it. It's complex. That's evident. So we'll order supplemental briefing. But we're here, you're here, you brief the merits. So with 15 minutes, 16 minutes, why don't you turn to that, and then we'll set a schedule. The clerical issue is scheduled for supplemental briefing. Happy to, Your Honor. Thank you. What would help me, just to give you a start, in the complaint that we had, the first complaint, what was the first investigative step described as to each defendant? All right. That would be, I suppose it would be the issuing of subpoenas through the grand jury by, regarding the Collin County District Attorney's offense, Milner, in particular. And do you have a mental picture of the complaint so you can tell me the paragraph? Milner and Roach participated in issuing subpoenas seeking evidence from an initial grand jury on or about what time? It was in the fall of 2008. Okay. And then when is the first, when did you describe Mr. White's first involvement with an investigative step? Mr. White became involved in the case in December 2008. Well, that's an allegation that he became involved, but that wouldn't help us distinguish prosecutorial offense. So what's the first description of an investigative step that Mr. White took? I believe because he was operating under, at that time, Roach and Milner as a, he was first involved as, it's kind of confusing because he was first just involved as an assistant Texas Attorney General. Then he was appointed as an assistant district attorney for Collin County, and that was in fall of 2009, I believe. And then he was appointed the district attorney pro tem in July of 2010. He was involved in the investigation the entire time from his first involvement in December 2008. Now, he was involved in obtaining the subpoenas, the entire process of the investigation. That was not, it was not his role to simply, from December 2008, to perform no functions. He was, now we do not have the specific allegations of Mr. White applied for this specific subpoena from this grand jury in 2009. We don't have those in there. What we have is his participation in the case and in the investigation through the entire process beginning in December 2008. Now, there were six grand juries that were assembled. It stretched over a period of two and a half years. And I believe it was Milner or Roach actually had confessed that they did not have enough to present the case to a grand jury for indictment. But they would continue to assemble evidence and seek evidence and investigate. And that's what all of the actions were leading up to the indictment. They were using the grand jury as a tool, as an investigative tool. It wasn't part of the judicial phase. It wasn't intimately connected to the judicial phase. And you heard my question earlier. What's the best case that defines when use of a grand jury is investigative versus use of a grand jury is connected to making a prosecutive decision? The latter absolutely immune, the former not. I think it's – it would probably be – I would say it would be Buckley. But this court's decisions in Lupe v. O'Bannon, Marrero v. City of Hialeah, and Hoog Watson v. Guadalupe County all discuss that when you are using a grand jury to issue subpoenas in an investigation or if you are assisting the police in their investigation, if you are performing the role of an investigator, what would be traditionally done – performed by the police or the sheriff's department or the Texas Rangers. When you're doing their task, when you're performing their job, then you're only, as a prosecutor, only entitled to the same level of immunity as they would be entitled, and that would be qualified immunity. Do you remember the Supreme Court decision Burns? Yes. Do you remember the footnote that seems to sort of paint with a broad brush about prosecutive involvement with grand juries? Yes. And I can see – the distinction I think that is important is – regarding grand juries is when they're – the prosecutor's performing as an advocate, something of that nature and that function. And that's why it's the functional approach. When they are performing acts as an investigator, then I think that's what divides it regarding a grand jury. And really, the dividing line, which has been drawn, and it's been drawn by this court as well, is pre-indictment actions and use of a grand jury that – to investigate without – when there is not probable cause that's been determined. Those are solidly within the investigative phase because there is no probable cause. There's no indictment, and in fact – So you're saying this case is easy in a way because we know the six grand juries at the district attorney level, none of them returned an indictment. So clearly, that was investigative. It never led to a prosecutive decision, never triggered judicial proceedings. But it does look like once it got to the attorney general level, grand jury, indictment. Well, but the attorney general – remember, the attorney general – the indictment did not come until two years after the attorney general's involvement. Now, the attorney general had been designated as the district attorney pro tem immediately before the indictment was returned. But the involvement of White and of Abbott in appointing him, but the attorney general's office had been involved from early on. Well, you do describe appointive roles, but – and yet I'm not sure you've given enough specificity to say that they took any actions that were those of a prosecutor playing the role of policeman. Well, it's the – there are no – there were no actions taken up until the indictment that were – have been identified as being intimately connected to the judicial phase. The – White's role in the investigation – I'm sorry, in this case was in the investigation and in the investigative phase until there was an indictment that had been obtained, and that's what starts. The indictment – I'm curious. The indictment describes the bribery as preceding her election? Yes, yes. So when is the – when was the – she was convicted for this, for bribery, and what – when was the crime itself? Well, it's – as the court of criminal appeals has noted and as the district court in Collin County noted, there was no crime. Yes, but the crime that she was convicted of before she was exonerated on habeas, the crime acts occurred in what time frame? It was before 2008. It was during the campaign or before – She was then elected in 2008. Exactly, yes. And then two years of investigation. Right. An indictment in 2010. Trial and convict – no, she didn't – yes, she did go to trial. She waited for appeal. Yes. So the – but the investigation began almost immediately. I think it was in March 2018. It was right after the primary, after she had won the primary. The alleged bribery had occurred before that, but the – but from the very beginning of this case, there was never any crime here. There was no probable cause of any crime because the law did not actually make any of the conduct, even as alleged, to be criminal. And that was in the plain reading of the statute. It was not criminal at the time or thereafter or before. And there's been a claim that the law somehow changed, that the Texas Court of Criminal Appeals provided a novel interpretation of the statute that defeated the criminality of what the allegations were originally. Didn't some intermediate Texas appellate judges disagree that there was a – thought there was a crime here? It's been – it's – well, it was in relation to the Kerrigs, which were the co-defendants. One panel of the Dallas Court of Appeals affirmed, and then one panel reversed. So there was disagreement in the intermediate courts and then the Supreme Court – the court of criminal appeals. Regarding the Kerrigs, yes. Yes, that's true. But at the time – And the jury made a finding. There was a conviction. It's been subsequently – there's been an expungement or an exoneration. But unless they were improperly instructed, a jury concluded there was evidence. Well, Your Honor, they necessarily had to have been improperly instructed on the law because there was no crime. It was not a crime. And the plain language of the statute, as the court of criminal appeals said, there was no crime. This was not criminal behavior. But that did not stop the district attorney from initiating an investigation and the attorney general's involvement and investigating for two and a half years. So with respect to White and the VOAG defendant, can you point to where in the First Amendment complaint there are specific allegations with respect to White's investigative role? The – That's what I have to go – if assuming that we address this, that's what I have to look at, right? Yes. And our position is that it was – he was – that's what he was doing from 2008 up until the indictment. I know that's your position. I just – I need some specific allegations beyond just while he was investigating. It's – I don't think we have the specific ones simply because, for one thing, the grand jury proceedings are confidential and we don't know what was going on in there. But the – there are allegations of his participation with the grand jury process. There are allegations that for two and a half years he was part of the investigative team. As far as specific acts, did he sign this search warrant? Did he go out and obtain this piece of paper? No, we don't have those. And part of the reason is we haven't done any discovery yet. So the – but the heart of this is that there was the allegations against – and it doesn't even seem to be much disputed here that the conduct before the indictment was investigative and therefore would not be covered by absolute immunity. The heart of the defense appears to be that it was – that it's covered by qualified immunity. The – and this is because it was – the conduct was in the investigative phase. And this is a case that's unusual. This case has many unique factors to it. But one of the biggest ones is the fact that there was no police involvement. There was no Texas – there were no Texas Rangers. There were no sheriffs that would have performed the investigatory phase. Now, if the district attorney had been advising the police on how to perform those duties, how to do – what investigation to do and things of that nature, that would be participating in the investigatory phase. But they eliminated the middleman here in the investigation by conducting it entirely by themselves. And because they were conducting the investigation just as a police officer would, a detective would, they are entitled to no greater immunity. And to apply absolute immunity in this context would be extending them greater immunity than the police or the sheriff's department would enjoy performing the same functions. Now, there is also an allegation I want to touch on. That's an unofficial immunity being before this court. And the – that's an affirmative defense under Texas law that the defendants carry the burden to prove through the entire process. We – it's not shifted to us on a motion to dismiss, to defeat that. They have presented no evidence and really made no effort on at least one prong of that, which is a demonstration of good faith. And there simply has been no demonstration of good faith, just an assumption, just they want assumed good faith in the performing of their duties. Now, we've also argued that the conduct or the misconduct of abusing the grand jury system, destroying evidence, things of that nature, was ultra-biased and outside the scope of their duties and their authority. And if something is ultra-biased, it's not covered by official immunity. I do want to address quickly the immunity regarding Governor Abbott. I – assuming that this court has jurisdiction at this point and we're addressing absolute immunity in relation to Governor Abbott, the – there was no immunity because his actions, admittedly, were administrative. They were related to the failure to supervise the assistant attorney general he assigned to go over and take over this prosecution. It was – there were failures in assigning the district attorney without – I mean, the assistant attorney general without evaluating even the credibility of the case, but then failing to supervise once the – Mr. White was assigned. Regardless of whether there's qualified immunity in relation to that, there's no absolute immunity because none of those activities were intimately connected to the judicial affairs. So tying in the fact that my understanding was that Abbott had been dismissed, so tie all that into what you just said. Yes, and that's true. This is – I'm basing this solely on the idea that that dismissal was ineffective, as has been claimed by the appellants. Assuming that was, I just wanted to address the absolute immunity questions regarding Abbott. But he has been dismissed, and we don't believe that he is actually part of this appeal or part of the case any longer. Because Wooten filed a response to a 28-J letter about Abbott and said he's out of the case. Yes, yeah. So have you entered some sort of agreed dismissal in the district court or anything? No, it's just the district court's dismissing him based on qualified immunity in the more recent order of December 23rd, I believe. Well, I'm sorry, I'm confused. I thought Abbott had been separately independently dismissed and was out of this case. He has been by the district court through the second order, which was based on the second amended complaint regarding qualified immunity. That's the one that he ordered filed after his ruling on immunity? Yes, yes. So that's the part of the confusion here. Do you include all of that in the supplemental briefs? Yes. In the separate appeal to our court, does that address Abbott's dismissal on qualified immunity or not? We are not actually appealing that decision. The decision on qualified immunity has been appealed by the appellants here. It also sounds like the parties could get together and agree on some stipulated dismissals, et cetera, et cetera, that could assist with this supplemental briefing to try to clean this up. Unless you're just trying to be difficult. No. I would never want to be difficult. I'm not joking. I'm very serious. I agree. But I'm not sure how that would work. But it's not something that we would. Why don't you try? Yeah, we're not opposed to considering something like that. Well, you ought to try. Especially with the direction of the court. So I see that my time has expired. Your time has expired? Yes. Rebuttal, are you? Thank you. I'd like to focus my rebuttal just on the prosecutorial immunity issues. And Your Honor raised a very good question. Where are the factual allegations against Roach and Milner? That's where I think Your Honors can look at. And they're woefully inadequate. Against the district attorney, there's only two factual allegations. And look at what they are. That he entered the order of recusal and that he made a comment to the Texas lawyer. Those are the only allegations in the live complaint that's before this court. There's nothing non-conclusory about supervision or anything like that. And that doesn't even meet the threshold level of a plausible claim under ICPOL. And if you, not that I want you to look at the Second Amendment complaint, but it fares no better than the first complaint with respect to Roach. I think on the prosecutorial immunity issue, based on the inadequacies and the conclusory, really legally insignificant factual allegations against district attorney Roach, he is entitled to prosecutorial immunity, which is an issue I think is beyond cabal that this court has jurisdiction to address. What's any significance? The counsel opposite says the one significant fact here is there's no police involvement. What's your response to that? There wasn't. But think about it. How does a police detective get a subpoena? He goes to a judge. Going to a grand jury for a subpoena is a uniquely prosecutorial function. A police detective can't go to a grand jury and, say, issue a subpoena for bank records or issue a subpoena. If you think about what Buckley contemplated, Buckley is a very small exception to the jury. But if there are no police and no Texas Rangers, who's coming in front of those grand jurors for two full years? The prosecutors. And that's your understanding. And they're soliciting. They're soliciting, not suggesting. Sorry. Investigating. And that's where we get into this very amorphous concept of when does it, where is that litmus test, if one exists, which I don't think it does, of when they step from the shoes of investigatory to, this is how I'm going to present my criminal case. Okay. Thank you, counsel. Thank you. Thank you. As to absolute immunity, Mr. Cox has confirmed that there's no specific allegation as to White's conduct. Right. And he says, well, we can't do it because it's all secret, and so we need discovery. So respond to that. Wicks, at page 997, says that's just a natural result of immunity defenses. Sometimes a plaintiff's not going to be able to state a claim without discovery, and that's just how it goes. That's the 12B6 mechanism. There's no absolute immunity. Absolute immunity also applies to Abbott under Vandekamp. I think that's quite clear. On qualified immunity, this was something that. . . Well, I suppose if evidence is being solicited and people are showing up in grand jurors, they'd know who the assisting prosecutor is in the grand jury. So it would be known if White were in those grand juries interviewing. That's a good point, Your Honor. There could have been specific allegations as to White. There are not. That means absolute immunity applies. Qualified immunity applies because several reasonable people, including two justices on the State Court of Appeals, thought there was a crime here. It can't be said that every reasonable official in the defendant's position would have thought nothing was amiss when someone is getting 60 times the campaign contribution in exchange for favorable rulings once she's elected. That's what the Court of Criminal Appeals said was going on. Since that ruling, have there been any prosecutions of campaign donations from lawyers to judges ever under bribery statute? I'm not aware of what's happened since then, Your Honor. Just briefly on official immunity, this is the third prong of what we're saying. Jones v. Bach from the Supreme Court explains that official immunity is something that may be asserted at the 12B6 stage. We don't need evidence. It's a good-faith objective standard. It's just like qualified immunity. And unless the court has further questions, I'll yield the remainder of my time. The clerk's office will issue, by the end of the week, a regular briefing schedule, so you'll have an opportunity for a reply brief. It won't be simultaneous letter briefs. This will be a regular briefing schedule. I appreciate that, Your Honor. Thank you. Okay, that concludes our cases for the day. We stand in recess.